Grafton
No. 89-100

THE STATE OF NEW HAMPSHIRE

v.

AUTOWARE, INC. & a.

August 1, 1990

*John P. Arnold*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*R. Peter Decato*, of Lebanon, by brief and orally, for the defendants.

THAYER, J.   The State appeals the denial by the Superior Court (*Smith*, J.) of its petition under RSA 236:107 (Supp. 1989) for a mandatory injunction ordering the defendants, Autoware, Inc., and Harry and Daniel Ware, to remove all junk from their property so as to comply with the provisions of RSA chapter 236. The State argues that the trial court erred in ruling that Autoware is exempt under the motor vehicle dealer exception in the definition of "junk yard" found in RSA 236:91, IV (Supp. 1989). For the reasons that follow, we reverse.

The individual defendants, Harry A. Ware and Daniel B. Ware, operate a garage adjacent to Route 4 in Canaan under the corporate name Autoware, Inc. Their garage has been registered as a motor vehicle dealer for many years. *See* RSA 261:104; RSA 259:18, II.

The State filed a petition for an injunction on November 18, 1986, in which it alleged that the defendants were storing junk in violation of RSA 236:93 (Supp. 1989) and RSA 236:96 (Supp. 1989), legislation relative to junk yards along federally funded highways. The defendants filed an answer on January 29, 1987, in which they argued, *inter alia*, that they were a motor vehicle dealer entitled to the exemption created by RSA 236:91, IV (Supp. 1989). Following a hearing on October 12, 1988, the superior court ruled that Autoware qualified for

the exception found in RSA 236:91, IV (Supp. 1989) and denied the State's petition. The State filed a motion for reconsideration, which was denied, claiming that the court had misinterpreted RSA chapter 236.

It is the law in New Hampshire that a person may not operate, establish or maintain a junk yard adjacent to the interstate, federal aid primary and turnpike systems until he or she has obtained a license and certificate of approval. RSA 236:93 (Supp. 1989); *see* RSA 236:90. It is undisputed that Autoware is situated along the federal aid primary system and is governed by RSA 236:90–110. This subdivision defines "junk yard" as:

> "an establishment or place of business which is maintained, operated, or used for storing, keeping, buying or selling junk, or for the maintenance or operation of an automobile graveyard, and includes garbage dumps and sanitary fills. *The word does not include any motor vehicle dealers registered with the director of motor vehicles under RSA 261:104 and controlled under RSA 236:126.*"

RSA 236:91, IV (Supp. 1989) (emphasis added). The issue in this case is whether Autoware meets the definition of "motor vehicle dealer" in this paragraph and is thus exempt from the junk yard requirements of RSA 236:90–110.

According to the statute, if Autoware is registered as a dealer under RSA 261:104 *and* is controlled under RSA 236:126, it is so exempt. Although the State questions whether the defendants are properly registered under RSA 261:104 and RSA 259:18, that issue was not presented to the trial court, and we will not consider it here. *Daboul v. Town of Hampton*, 124 N.H. 307, 309, 471 A.2d 1148, 1149 (1983). Therefore, the only question to be decided is whether Autoware is "controlled under RSA 236:126." This statute is located in the subdivision of laws applicable to junk yards located along roads other than federal aid primary highways and provides:

> "Both new and used car dealers are hereby required to remove from their premises registered with the director of motor vehicles as their principal place of business any motor vehicle which is of the type referred to in RSA 236:112, I, under the definition of junk yard, within at least 160 days from the date of its original entrance thereon. . . ."

RSA 236:126. The ultimate question we must decide is whether RSA 236:126, in referring to "new and used car dealers," limits the operation of § 126 to car dealers meeting the definition in RSA 236:112, V,

or whether § 126 applies also to car dealers, like Autoware, who may not fall within that definition.

While the subdivision of laws applicable to junk yards located along non-federally funded highways includes a definition of "used motor vehicle dealer," *see* RSA 236:112, V(b), the subdivision applicable to junk yards located along federally funded highways does not. However, in the title under which Autoware was registered as a motor vehicle dealer, RSA 259:18, II defines the term "dealer." Thus, we must first determine whether the two definitions are materially different. RSA 259:18, II defines "dealer" as:

> "every person principally engaged in the business of buying, selling, or exchanging motor vehicles, trailers, semi-trailers or tractors, on commission or otherwise, and who maintains in operating condition and in operation and at which location the dealer does a major portion of his business, a place of business capable of housing indoors, in one building, in an area of at least 1,200 square feet, 5 average-sized automobiles, *which space may be used for other related purposes devoted to the motor vehicle, trailer, or semi-trailer business* and who offers mechanical service, in which the repair of motor vehicles, trailers, semi-trailers or tractors is subordinate or incidental to the business of buying, selling, and exchanging the same."

(Emphasis added.) RSA 236:112, V(b) defines "used motor vehicle dealer" as:

> "every person or firm principally engaged in the business of buying, selling and exchanging secondhand motor vehicles or tractors, who maintains in operating condition and in operation and at which the dealer does the major portion of his business a place of business capable of housing indoors in one building, in an area of at least 1200 square feet, 5 average sized motor vehicles, *devoted to the used motor vehicles, or tractor business*, and gives mechanical service on the same and at which the repair of used motor vehicles, or tractors is subordinate or incidental to the business of buying, selling and exchanging the same."

(Emphasis added.) The definition in RSA 259:18, II differs from that found in RSA 236:112, V(b) in that the former allows the 1200-square-foot space to be used for purposes *related to* the buying, selling, and exchanging of motor vehicles, whereas the latter requires the space to be used almost exclusively for these specific purposes. The trial court found that the definition in § 112, V(b) was more re-

strictive, and that Autoware would not qualify for the exclusion set forth in RSA 236:91, IV (Supp. 1989) if that definition applied. We agree.

The final question, therefore, is whether the RSA 236:112, V(b) definition applies and only dealers meeting that definition are "controlled under RSA 236:126."

Although RSA 236:90–110 do not define a dealer or used car dealer, the trial court ruled that the § 112, V(b) definition did not apply and apparently applied the definition found in RSA 259:18 to find Autoware a dealer controlled under RSA 236:126. Since the defendants are registered as a used car dealer, the State Department of Safety must have determined that Autoware fit the definition of "dealer" found in RSA 259:18. *See* RSA 261:104; RSA 259:18. The court rejected the State's contention that the definitions of new and used "motor vehicle dealer" found in RSA 236:112, V apply to the motor vehicle dealers referred to in RSA 236:91, IV (Supp. 1989). It explained that although § 112 states that for the purposes of §§ 111–129, which is the subdivision regulating junk yards located along non-federally funded highways, the definitions of § 91, II, III and IV are to be included, nowhere in § 91 is it stated that any definitions found in § 112 are to be included for the purpose of the former subdivision. The trial court likewise rejected the State's argument that "the only dealers controlled under RSA 236:126 are those who meet the definition in RSA 236:112 V." Instead, the court ruled that the two junk yard law subdivisions were not intended to mirror each other, and that for purposes of § 91, IV, the meaning of "used car dealer," as found in § 126, is not controlled by the definition of "used motor vehicle dealer" set forth in § 112, V(b).

RSA 236:126, quoted above, refers to RSA 236:112, I, when describing the type of motor vehicle that used car dealers are required to remove from their premises within 160 days. Section 112 provides that:

> "For the purposes of this subdivision:
> I. In addition to the definitions in RSA 236:91, II, III and IV 'junk yard' means any business and any place of storage or deposit, . . . which has stored or deposited 2 or more unregistered motor vehicles which are no longer intended or in condition for legal use on the public highways, or used parts of motor vehicles or old iron, metal, glass, paper, cordage, or other waste or discarded or secondhand material which has been a part, or intended to be a part, of any motor vehicle, the sum of which parts or material shall be equal in bulk to 2 or more motor vehicles. . . ."

RSA 236:112, I (emphasis added). As noted by the trial court, § 112 incorporates into the definition of "junk yard," for purposes of the subdivision comprising §§ 111–129, the definitions found in § 91, II, III and IV, whereas § 91 does not incorporate the definition found in § 112. The State argues, nevertheless, that the definition found in § 112, V(b) controls the meaning of "used car dealer" in § 126 and "motor vehicle dealer" in § 91, IV. We agree with the State.

In order to understand and apply § 126, it is necessary to know what is meant by "new and used car dealers." *See* RSA 236:126. Although that section clearly applies to junk yards along federally funded highways by virtue of RSA 236:91, IV (Supp. 1989), the location of § 126 in the second subdivision, and the fact that the definitions to be used for purposes of that subdivision are set forth in § 112, convince us that the definitions of new and used motor vehicle dealers in § 112, V govern the meaning of "new and used car dealers" in § 126, whether § 126 is applied to junk yards adjacent to nonfederally funded highways or to junk yards along federally funded highways by virtue of RSA 236:91, IV (Supp. 1989). *Cf.* RSA 259:18 (statute defines "dealer" but does not define "new car dealer" or "used car dealer").

Accordingly, we hold that the trial court erred in finding that a used motor vehicle dealer need not satisfy the definition set forth in RSA 236:112, V(b) in order to be controlled under RSA 236:126 and thus to qualify for the motor vehicle dealer's exception under RSA 236:91, IV (Supp. 1989).

*Reversed.*

HORTON, J., did not sit; the others concurred.